J-S31033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LYNELLE UNIQUE FLOWERS | : | |
| | : | |
| Appellant | : | No. 2344 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 9, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003141-2021

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED JANUARY 22, 2026**

Appellant Lynelle Unique Flowers appeals from the judgment of sentence imposed following his convictions for first-degree murder and related offenses. On appeal, Appellant challenges the denial of his suppression motion and argues that the trial court erred by considering his statements to police at trial. We affirm.

By way of background, Appellant was charged with first-degree murder and related charges following a shooting that occurred in June of 2021. Following his arrest, police conducted an interview with Appellant, who ultimately confessed to the murder. Prior to trial, Appellant filed a suppression motion in which he claimed that his statements to police were involuntary. Following a hearing, the suppression court denied Appellant's motion.

In June of 2024, the matter proceeded to a bench trial. Appellant was ultimately convicted of first-degree murder, conspiracy to commit murder,

third-degree murder, two counts of aggravated assault, conspiracy to commit aggravated assault, and possession of a weapon.[1]  On August 9, 2025, the trial court imposed a mandatory sentence of life without parole for first-degree murder.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

The trial court erred when it denied the motion to suppress [Appellant's] confession, as the confession was involuntary and was unconstitutionally obtained.

a. Subsequent to that, the trial judge as fact finder, was bound to review the confession for voluntariness at trial, regardless of the credibility of the confession.

Appellant's Brief at 8 (some formatting altered).[2]

We address Appellant's claims together.  Appellant argues that the suppression court erred in denying his motion to suppress statements he made to police following his arrest.  *Id.* at 15-26.  Appellant acknowledges that there was "no misconduct by the Troopers" and there was "no evidence of them screaming or even allegations of anger[.]"  *Id.* at 25.  However,

_____

[1] 18 Pa.C.S. §§ 2502(a), 903, 2502(c), 2702(a)(1), 2702(a)(8), 903, and 907(b), respectively.

[2] Although Appellant raised an additional issue in his Rule 1925(b) statement, he has withdrawn that claim for purposes of appeal.  *See* Appellant's Brief at 8.

Appellant argues that the totality of the circumstances demonstrate that his arrest and interrogation were "well calculated to overbear [Appellant's] will," specifically, "[t]he method of arrest," the interrogation lasted for fifteen hours, Appellant's "mental state, the [police's] psychological tactics of calling him a killer," and the police denying Appellant's repeated requests to speak with his girlfriend by replying that she would only speak with Appellant if Appellant "told the truth and admitted what happened" constituted "psychological coercion, requiring this Court to find the confession was not voluntary." *Id.* at 22, 25-26. Appellant further contends that the fact that his arraignment took place "only after the confession and 15 hours after he was brought into custody, and his lack of understanding that he was under arrest" support a conclusion that the custodial interrogation was coercive. *Id.* Appellant also claims that the trial court erred by failing to revisit the suppression court's findings and make an independent determination as to whether Appellant's confession was voluntary. *Id.* at 29.

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*     *     *

- 3 -

It is well-established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The voluntariness of a confession is determined from a review of the totality of the circumstances surrounding the confession. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516, 525 (Pa. 2017)

(citations omitted and some formatting altered).

Our Supreme Court has explained:

The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement. The mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement. Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which might serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. Martin*, 101 A.3d 706, 724-25 (Pa. 2014) (citations

omitted).

Here, the trial court addressed Appellant's claim as follows:

Appellant contends that the trial court erred when it denied the motion to suppress [Appellant's] confession, as the confession was involuntary and was unconstitutionally obtained.

First, it should be noted that the suppression motion was handled by the Honorable Jeffrey R. Sommer, now a senior judge. This matter was reassigned to the undersigned in 2024 upon assuming the bench. This court incorporates the well-reasoned order entered by Judge Sommer on September 22, 2023. Further, the trial judge (Judge McCabe) viewed the entirety of Appellant's confession during the bench trial in open court during the Commonwealth's case-in-chief. This judge concurs with the judgment and order of Judge Sommer, and reiterates the pertinent part of that order below:

Appellant [moved to suppress] statements he made to law enforcement during an interrogation that followed his arrest in August [of] 2021. According to Appellant, he made the statements only after his will was overborne following questioning by Pennsylvania State Troopers during several rounds of interrogation, while he was handcuffed, over the course of fifteen (15) hours. Appellant asserts that he made it clear from the outset of the interrogation that he was unaware of the circumstances surrounding the homicide, yet law enforcement continued to pressure him to answer their questions "honestly." According to Appellant, the circumstances surrounding the interrogation, including the length of the interrogation, the repeated pressure to answer questions despite his refusal to provide any information and refusals to allow him to speak to his girlfriend, stripped Appellant of his free will and the ability to end the interrogation. In addition, Appellant contends that when he did request that the interrogation stop approximately two (2) hours into the interrogation, law enforcement failed to acknowledge or honor that request and continued to question him for hours more. Appellant argues that the statements that resulted violated both his **_Miranda_**[3] rights and his due process rights.

_____

[3] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

- 5 -

On September 14, 2023, the court held a lengthy hearing on Appellant's motion. At the hearing, the Commonwealth introduced into evidence a recorded video of Appellant's interrogation. (Ex. C-1). In addition, the Commonwealth introduced into evidence a transcript [of] Appellant's interrogation (Ex. C-2) and notes/action reports of discussions held off-video with Appellant (Ex. C-4[,] C-5). The Commonwealth also called as a witness at the hearing Trooper Stefano Gallina of the Pennsylvania State Police ("PSP") and Lieutenant William J. Donahue.

Trooper Gallina testified that he conducted approximately six (6) hours of interrogation of Appellant. At the time of the interrogation, he was the supervisor of the criminal investigation unit of the Embreeville Barracks, which is where Appellant was interrogated. He testified to his training and experience in conducting interviews, the issuance of **Miranda** rights and PSP protocols regarding criminal investigations. He testified that prior to August [of] 2021, he believed he had been involved in at least 200 interviews.

During his testimony, Sgt. Gallina relayed the events leading up to Appellant's arrest and interrogation. He testified that he was present at Appellant's residence in Philadelphia when Appellant was arrested in the early morning hours, but he did not question Appellant in his home. Sgt. Gallina remained at the home while patrol troopers transported Appellant to Embreeville and he ordered the troopers not to speak with Appellant, but to provide him with water if asked. He testified that once he arrived at mid-morning at Embreeville he began the interview. Appellant was placed in one of two interview rooms and provided with his **Miranda** warnings. Sgt. Gallina (then Corporal) advised Appellant as follows:

> [Sgt. Galina]: . . . Before we get started with anything I'm gonna read you your rights. Okay? You have the right to remain silent. Anything you say or do can and will be used against you in a court of law. You have the right to have an attorney present with you during questioning if you so desire. If you do decide to answer any questions you can stop at any time you wish. You can have an attorney present. You cannot have one. [sic] Anytime you're ready to talk you can talk. If you wanna talk about a little bit of things, talk about all it, none of it — whatever. It's your choice we're not gonna force you.

- 6 -

[Appellant]: Yeah

[Sgt. Galina]: . . . into doing anything you don't wanna do. You understand?

[Appellant]: Yes

During the interrogation, Appellant was allowed to take smoke breaks and was provided with a blanket as requested. At various times, law enforcement assisted Appellant, who was handcuffed, with removing the blanket and placing it back on himself when requested. Sgt. Gallina testified that during his interaction Appellant was subdued and quiet and the interrogation never became argumentative. Sgt. Gallina testified that Appellant spent much time during the interrogation asking law enforcement about the information they had about the homicide. Sgt. Gallina testified that breaks were taken during the interrogation and the times of those breaks were noted. Sgt. Gallina testified that Appellant's smoke breaks could last from 10-15 minutes. Sgt. Gallina testified that Appellant did not indicate during the course of his questioning that he wanted to stop or no longer wished to speak with them. Sgt. Gallina testified that although at times there were long periods of silence, he never broke the silence. He testified that he believed Appellant to be thinking about and considering what he may or may not have wanted to say and the situation in which he now found himself. When asked about Appellant's statement "stop, stop," which was spoken about two hours after the interrogation began, Sgt. Gallina testified that the phrase was used by Appellant in a joking manner in response to his suggestion that Appellant was afraid to talk with investigators. Sgt. Gallina testified that Appellant did not stop talking at that point, nor did he request an attorney. The exchange was as follows:

[Appellant]: Oh man. What y'all thinking?

[Sgt. Galina]: What I'm thinking is that you wanna tell it but you're scared.

[Appellant]: Scared. Stop-stop-stop.

[Sgt. Galina]: I do . . . .

As for requests to speak to his girlfriend, Sgt. Gallina testified that prior to Appellant's arrest he was advised by Appellant's girlfriend that she would agree to speak with him only if he admitted to being responsible for the homicide. Sgt. Gallina testified that he

- 7 -

appropriately communicated to Appellant that his girlfriend would speak to him if he was honest about his role in the homicide.

At the conclusion of the hearing, the court reviewed the provided transcript and video of the interrogation with consideration of the above standards. Having done so, the court concludes that the Commonwealth met its burden of proving by a preponderance of the evidence that Appellant's confession was voluntary. The evidence demonstrates that the interrogation was not coercive or abusive, whether it be the conditions of the detention or the conduct of the questioners.

Appellant, a college graduate, was given his *Miranda* warnings at the start of the interrogation. During Appellant's processing, as testified to by Lt. Donahue, Appellant requested to speak further and again was advised that his *Miranda* rights were still in effect. Trooper [Tyler] Albee gave *Miranda* warnings yet again prior to Appellant resuming to speak on the record with law enforcement as reflected below.

[Sgt. Galina]: But it's just some things we have to explain since we're back in here again, like, and I'll let Troop[er] Albee do that.

[Trooper Albee]: Uh, we talked when you were getting processed. You said, thought about you wanted to talk some more. We talked outside. Uh, you had a cigarette. We spoke. Uh, you said you'd agree to come back in, uh, and talk about the incident. Um, so that's why we're here. We just gotta explain that. Uh, I also have to advise you, d- you remember we read you your, uh, *Miranda* warnings in the beginning?

[Appellant]: Yes[.]

[Trooper Albee]: Okay.

[Appellant]: Could you read 'em again?

[Trooper Albee]: Yeah. You have an absolute right to remain silent. Anything you say can and will be used against you in a court of law, right? You have the right to [have] an attorney present with you during and before questioning. Alright. If you can't afford to hire an attorney, one will be appointed to you, without charge, before questioning begins, if you so desire. Um, if you wanna talk to us, you

decide to answer questions or talk, you can stop at any time you wish, and you cannot be forced to continue. All right. You understand all those? You remember?

[Appellant]: Yes.

As noted above, Appellant was provided with a blanket, food when requested, water and smoke breaks. He was not verbally abused or physically mistreated. He was not ill. The court does not find the statements made by law enforcement regarding the willingness of Appellant's girlfriend to speak with him to have been coercive or misleading. Finally, although at first glance the duration of the interrogation might give one pause, when considered within the context and entirety of the circumstances of the interrogation, the court does not find this factor to be determinative of the voluntariness of Appellant's statements. Appellant was provided with breaks, at times up to 20 minutes long. Appellant sat quietly and considered his circumstance often. Appellant also spent time questioning law enforcement about the information they had. He was calm and reasoned. The record simply does not reflect 15 straight hours of non-stop questioning of Appellant.

The court also agrees with the Commonwealth, having reviewed the transcript and video of Appellant's alleged request to "stop" the interview, that the statements of "stop-stop" did not amount to an invocation of his *Miranda* rights. The video demonstrates the exchange between the parties had to do with questions about whether Appellant was scared to answer questions; it was not a request to end the interview. Appellant never asked again to stop, nor did he request any further action be taken, such as requesting a lawyer. Appellant's statement was voluntary and not the result of coercion or a violation of his constitutional rights and thus the motion is denied.

Trial Ct. Op., 2/5/25, at 18-23 (some formatting altered, some citations omitted).

Following our review, we conclude that the trial court's factual findings are supported by the record and that the trial court's legal conclusions are

- 9 -

free from error. **See Yandamuri**, 159 A.3d at 516, 525. Specifically, we agree with the trial court's conclusion that, based on the totality of the circumstances, Appellant's statement to police was voluntary. **See Martin**, 101 A.3d at 724-25. To the extent Appellant claims that the trial court was required to revisit the suppression court's findings or requests that we do so on appeal, we decline to revisit the suppression court's credibility determinations or re-weigh the evidence. **See Yandamuri**, 159 A.3d at 516, 528; **see also Commonwealth v. Poplawski**, 130 A.3d 697, 711 (Pa. 2015) (reiterating that, as an appellate court, we will not upset the credibility determinations of a suppression court, "within whose sole province it is to pass on the credibility of witnesses and the weight to be given their testimony"). Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/22/2026